UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                                               Case No. 8:13-bk-13738-MGW
                                                                                        Chapter 13
John Burgess,

     Debtor.
_____/

**MEMORANDUM OPINION AND ORDER ON DEBTOR'S EMERGENCY
MOTION TO DETERMINE APPLICABILITY OF THE AUTOMATIC STAY[1]**

Before filing this case, the Debtor was incarcerated by a state court for submitting a fraudulent jurat attached to a fact information sheet he provided to a creditor attempting to collect a judgment against him. Under the state court order incarcerating him, the Debtor was to remain under arrest (first at home and later in jail) until he submitted a full and complete fact information sheet and paid $5,914.72 in sanctions. The Debtor has now asked this Court to rule that the automatic stay, which went into effect upon the filing of this case, bars the state court from continuing its contempt order incarcerating the Debtor.

Section 362(b) provides that the automatic stay does not bar the continuation of criminal proceedings against the debtor. For the reasons set forth below, the Court concludes that a contempt order is criminal in nature—even if it arises in a civil proceeding—if it is intended to vindicate the court's dignity or authority. Here, the contempt order does exactly that. And because the state court's contempt order seeks to vindicate that court's authority, it is punitive and therefore criminal in nature. As a consequence, the automatic stay does not apply.

---

[1] This Memorandum Opinion and Order is intended to supplement the Court's oral ruling from the bench at the hearing on October 22, 2013.

## Background

At some point before this case was filed, a state court sanctioned the Debtor $2,256 because he failed to comply with its previous orders.[2] When the Debtor failed to comply with the sanctions order, the state court held a show-cause hearing and directed that the Debtor be incarcerated and remain in jail until he purged his contempt by paying the $2,256 in sanctions.[3] Later the Debtor was held in indirect criminal contempt by the state court because he submitted a fraudulent fact information sheet to AIM Recovery, which had obtained a judgment against him in that state court action on July 31, 2012.[4] As a sanction, the state court ordered the Debtor be placed under house arrest until (i) he submitted a full and complete Fact Information Sheet; and (ii) paid $5,914.72 in sanctions.[5]

The state court later ordered that the Debtor be incarcerated in county jail until he purged his contempt.[6] The Debtor apparently asked the state court to release him (presumably back to house arrest) because he is a diabetic and is unable to take his custom insulin in jail (the jail will only allow him to use their insulin).[7] The state court held a hearing and denied the Debtor's

---

[2] Doc. No. 10-2 at 1.

[3] *Id.* at 2-3.

[4] Doc. No. 10-3.

[5] *Id.* at ¶¶ 2-5.

[6] Doc. No. 10-4.

[7] Doc. No. 10 at ¶¶ 3-8.

request to release him.[8] So the Debtor filed for bankruptcy and now asks this Court to undo the contempt order because it violates the automatic stay.[9]

## Conclusions of Law

Under section 362(b), the automatic stay does not bar the commencement or continuation of a criminal action or proceeding.[10] The Bankruptcy Code does not define what constitutes a "criminal action." At least one court has, explaining that a "criminal action" is an action brought to enforce a criminal law, with "criminal law" being defined as a legislative enactment applicable to at least a class of people that prohibits specified conduct subject to a fine payable to or imprisonment by the state upon the state's complaint.[11] The state court action here obviously does not fall within that definition of a criminal action. The question, then, is whether a contempt order entered in a civil action can ever constitute a "criminal action" or "criminal proceeding."

Courts have taken two different approaches to that issue. On the one hand, some courts hold that a contempt proceeding must be unambiguously "criminal in nature" to be exempt.[12] Almost uniformly, those courts define "criminal" narrowly, as only an action or proceeding brought to enforce "criminal law."[13] On the other hand, some courts examine the circumstances surrounding the contempt order to determine whether it is criminal or civil in nature.[14] Those courts hold that a contempt order is criminal in nature—and, therefore, beyond the reach of the

---

[8] *Id.* at 8.

[9] *Id.* at ¶¶ 10-16.

[10] 11 U.S.C. § 362(b)(1).

[11] *In re Dervaes*, 81 B.R. 127, 129 (Bankr. S.D. Fla. 1987).

[12] *See, e.g., In re Dervaes*, 81 B.R. at 129 (Bankr. S.D. Fla. 1987); *Rook v. Rook (In re Rook)*, 102 B.R. 490, 493 (Bankr. E.D. Va. 1989) (citing *In re Cherry*, 78 B.R. 65, 70 (Bankr. E.D. Pa. 1987)).

[13] *In re Rook*, 102 B.R. at 493.

[14] *Id.*; *see also Int'l Distrib. Ctrs. v. Walsh Trucking Co.*, 62 B.R. 723, 729 30 (S.D.N.Y. 1986).

automatic stay—if the order is intended to uphold or vindicate the court's authority or dignity.[15] For two reasons this Court adopts the view that a contempt order issued in a civil case is criminal in nature for purposes of section 362(b) if it intended to uphold or vindicate the court's authority or dignity.

First, that approach is consistent with pre-Code law.[16] It is well settled that the Bankruptcy Code must be construed in light of its common-law background.[17] Historically, a court's power to hold a party in contempt in order to uphold or protect the court's dignity has been viewed as a fundamental interest that may be limited by Congress only with the clearest statement of intent.[18] Neither section 362(a) nor 362(b) reflects an intent to limit a power that is historically rooted in this nation's judicial system.

Second, holding that a contempt order that was criminal in nature could never be excepted from the scope of the automatic stay would disserve the public interest. It is often said that bankruptcy was intended to provide relief to the unfortunate and honest debtor.[19] For that reason, courts have declined to read section 362(a) in a way that precludes post-petition proceedings to enjoin disobedient conduct.[20] To read section 362(a) otherwise would allow

---

[15] *Forsberg v. Pefanis*, 2010 WL 2331465, at *1 (N.D. Ga. 2010) (analyzing *Kukui Gardens Corp. v. Holco Capital Grp., Inc.*, 675 F. Supp. 2d 1016 (D. Haw. 2009); *Lowery v. McIlroy & Millian (In re Lowery)*, 292 B.R. 645 (Bankr. E.D. Mo. 2003); *Stovall v. Stovall*, 126 B.R. 814 (N.D. Ga. 1990); *US Sprint Comm'cns Co. v. Buscher*, 89 B.R. 154 (D. Kan. 1988)).

[16] *Young v. United States ex rel. Vuitton*, 481 U.S. 787, 793 (1987); *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418 (1911) (citing *Bessette v. Conkey*, 194 U.S. 324, 333 (1904)).

[17] *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 542–43 (1994).

[18] *See Dominic's Restaurant of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760-61 (6th Cir. 2012) (quoting *In re Rook*, 102 B.R. 490, 493 (Bankr. E.D. Va. 1989)).

[19] *Marrama v. Citizens Bank*, 549 U.S. 365, 374–75 (2007).

[20] *E.g.*, *Dominic's Restaurant*, 683 F.3d at 760; *Jou v. Adalian*, 2011 WL 4435916, at *4 (D. Haw. Aug. 30, 2011) (citing *Stovall v. Stovall*, 126 B.R. 814, 815-16 (N.D. Ga. 1990); *Gedeon v. Gedeon (In re Gedeon)*, 31 B.R. 942,

4

unscrupulous debtors to violate the rights of others with impunity. A debtor should not be permitted to use bankruptcy to protect himself from the consequences of contumacious behavior.

The Court now turns to the circumstances surrounding the issuance of the contempt order in this case and whether the contempt order is, in fact, criminal in nature. In doing so, the Court is not bound by the fact that the contempt order itself says it is in the nature of an "indirect criminal contempt" sanction since the label affixed to the order by the court cannot change the nature and purpose of the contempt.[21] After reviewing the facts and circumstances surrounding the issuance of the contempt order, the Court can only conclude that it is criminal in nature.

To begin with, the state court held the Debtor in contempt for filing a fraudulent jurat attached to his fact information sheet. Perjury, of course, is a criminal offense. Moreover, the state court order incarcerating the Debtor came on the heels of a previous sanctions order the state court entered against him for violating its previous sanctions orders. It is clear from this Court's review of the record in the state court case that the Debtor has a history of disregarding or disobeying the state court's orders.

It is true, as the Debtor points out, that the state court's contempt order lacks a definite sentence and contains purge provisions (i.e., the Debtor can get out of jail by providing a truthful jurat and paying a $5,914.72 fine). An indefinite sentence and the ability to purge the contempt are typically characteristic of a civil—not criminal—contempt order because they are coercive in nature. And civil contempt orders are coercive in nature, whereas criminal contempt orders are

---

946 (Bankr. D. Colo. 1983); *In re Kearns*, 168 B.R. 423 (D. Kan. 1994)); *Kukui Gardens Corp. v. Holco Capital Grp.*, 675 F. Supp. 2d 1016, 1026-27 (D. Hawaii 2009); *Marine Midland Bank, N.A. v. Huber (In re Huber)*, 171 B.R. 740, 754 & n.17 (Bankr. W.D.N.Y. 1994) (citing and endorsing *US Sprint Comm'cns Co. v. Buscher*, 89 B.R. 154 (D. Kan. 1988)).

[21] *United States v. Haggerty*, 528 F. Supp. 1286, 1296 (D. Colo. 1981) (citing *Leitstein v. Capital Co. (In re Fox)*, 96 F.2d 23, 25 (3d Cir. 1938)); *see also United States v. Henry*, 2008 WL 2625359, at *3 (W.D. Va. 2008) (quoting *Int'l Union v. Bagwell*, 512 U.S. 821, 827, 114 S. Ct. 2552, 2557 (1994)).

punitive. But one of the purge conditions is a $5,914.72 fine, which cannot be reduced. And because the fine cannot be avoided or reduced, it is punitive in nature and designed to uphold the dignity of the court.[22]

In fact, the $5,914.72 fine in this case can be likened to restitution. Because the Debtor repeatedly failed to comply with the state court's orders, AIM Recovery was forced to incur attorney's fees. Had the Debtor complied with the state court's orders, AIM Recovery never would have incurred those fees. The $5,914.72 was intended to make AIM Recovery whole—not to coerce the Debtor into complying with a previous order. In other words, it is clear that the $5,914.72 fine is a punishment for violating the state court's previous orders.

That, along with the fact that the contempt order was issued because the Debtor committed perjury and had violated numerous prior orders, is what distinguishes the contempt order in this case from the run-of-the-mill civil contempt order. Consider the following hypothetical: a state court orders a party to turn over a deposit it was holding in escrow. When the party fails to turn over the deposit, the state court enters a contempt order directing the party to turn over the deposit within a specified time period, failing which the party will be incarcerated or obligated to pay a fine. In that hypothetical, the contempt order is indisputably civil in nature because it is intended to coerce the party into complying with the turnover order. Here, the state court is not trying to coerce the Debtor into complying with its previous orders; it is punishing him for failing to do so.

## Conclusion

In the end, if the purpose of the state court order is intended to uphold the court's dignity, then the order is criminal in nature. While the contempt order at issue here does have some

---

[22] *In re Wiley*, 315 B.R. 682, 687 (Bankr. E.D. La. 2004).

coercive components to it (i.e., the ability to purge the contempt, in part, by providing a truthful jurat), it appears to this Court that the principal purpose of the order, when taken as a whole, is to punish the Debtor for submitting a fraudulent fact information sheet and failing to comply with numerous orders issued by the state court. This makes it criminal in nature. And because the state court contempt order in this case is criminal in nature, its enforcement is not barred by the automatic stay.

Accordingly, it is

**ORDERED** that the automatic stay does not bar enforcement of the state court's contempt order.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, on ____January 07, 2014____.

_____
Michael G. Williamson
United States Bankruptcy Judge

Attorney Robert Stok is directed to serve a copy of this Memorandum Opinion and Order on interested parties and file a proof of service with the Court confirming such service.

**Robert A. Stok, Esq.**
**Stok Folk + Kon**
*Counsel for AIM Recovery*

**Robert N. Zimmerman, Jr., Esq.**
*Counsel for Debtor*